UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHALOS & CO., P.C.                          CIVIL ACTION

VERSUS                                       NO: 14-2441

MARINE MANAGERS, LTD., ET AL.                SECTION: R(5)

### ORDER AND REASONS

Third party defendant Matthaios Fafalios moves to dismiss defendants Marine Managers, Ltd. and Homeland Maritime, Ltd.'s third party complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), failure to state a claim under Rule 12(b)(6), and in the alternative, on the basis of *forum non conveniens*.[1] For the following reasons, the Court grants the motion.

### I.   BACKGROUND

#### A.   Parties

Defendants and third-party plaintiffs Marine Managers, Ltd. (Marine) and Homeland Maritime, Ltd. (Homeland) are foreign corporations organized and existing under the laws of the Marshall Islands.[2] At all relevant times, Marine and Homeland managed and operated the M/V TRIDENT NAVIGATOR, a bulk cargo vessel that traveled between international ports.[3]

---

[1]   R. Doc. 24.

[2]   R. Doc. 20 at 1 ¶ 1.

[3]   *See id.* at 3 ¶ 4.

Third-party defendant Matthaios Fafalios is a citizen of Greece, who presently resides in Louisiana.[4] On December 3, 2013, Marine and Homeland employed Fafalios as Chief Engineer of the M/V TRIDENT NAVIGATOR.[5]

Plaintiff Chalos & Co., P.C. (Chalos) is a law firm organized and existing under the laws of New York, with offices in New York, Texas, and Florida.[6] Following a United States criminal investigation into allegations that crew members aboard the M/V TRIDENT NAVIGATOR illegally discharged oily waste into the ocean, Marine and Homeland hired Chalos as independent legal counsel for Fafalios.[7]

### B.  Procedural Background

On October 24, 2014, Chalos filed this breach of contract action against Marine and Homeland, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332.[8] Chalos alleges that after signing an engagement and retainer agreement with the firm in February 2014, Marine and Homeland unilaterally declared the agreement null and void on June 17, 2014.[9] Chalos seeks to recover the legal fees, costs, and expenses incurred in connection with the firm's representation of Fafalios.[10]

---

[4]  *Id.* at 1 ¶ 2.

[5]  R. Doc. 15-1 at 1; R. Doc. 20 at 2 ¶ 4.

[6]  *See* R. Doc. 1 at 1.

[7]  *See* R. Doc. 20 at 6 ¶ 14.

[8]  R. Doc. 1.

[9]  R. Doc. 27 at 5 ¶¶ 15-16.

[10]  *Id.* at 7 ¶ 22.

On February 2, 2015, Marine and Homeland filed a third-party complaint against Fafalios alleging that he fraudulently induced them to enter the retainer agreement with Chalos.[11] Marine and Homeland invoke the Court's diversity jurisdiction, 28 U.S.C. § 1332; admiralty jurisdiction, 28 U.S.C. § 1333; and supplemental jurisdiction, 18 U.S.C. § 1367. Marine and Homeland seek to recover approximately $46,000 in damages for money they paid to Chalos before declaring the retainer agreement null. In addition, Marine and Homeland impleaded Fafalios under Federal Rule of Civil Procedure 14(c) to tender Fafalios directly to Chalos for recovery of all of Chalos's fees and expenses. Alternatively, Marine and Homeland impleaded Fafalios under Rule 14(a) on the ground that Marine and Homeland would pursue indemnity for any damages to Chalos for which Marine and Homeland may be found liable.[12]

## C.    Factual Background

In December 2013, Marine and Homeland (defendants) hired Fafalios to serve as Chief Engineer for defendants' vessel, the M/V TRIDENT NAVIGATOR.[13] Defendants' employment contract specified that Fafalios's employment would last for a term of seven months.[14] The employment contract also contains both a choice of law provision, which invokes Greek law, and a forum selection clause, which limits jurisdiction over disputes related to the employment contract to the Courts of Piraeus in Greece. The parties' choice of law provision reads in relevant part: "This Contract ("the Contract") shall be exclusively

---

[11]    R. Doc. 20.

[12]    R. Doc. 20 at 10 ¶ 28.

[13]    R. Doc. 27 at 3 ¶ 9.

[14]    R. Doc. 15-1 at 2.

3

governed by and construed according to the Greek Laws and the GSCA . . . to the exclusion of any other foreign legislation."[15] The forum selection clause provides in full:

> This Contract is supplemented by the Company's Policy and Regulations, Greek Law and the GSCA. Any dispute arising out of the interpretation or the performance of this Contract shall be referred to the Courts of Piraeus (Maritime Division) which are exclusively competent to hear these disputes applying Greek Law to the exclusion of the Courts of any country or jurisdiction.[16]

In mid-January 2014, approximately one month into Fafalios's employment, the United States began investigating the M/V TRIDENT NAVIGATOR and its crew after the vessel voyaged from Saudi Arabia to New Orleans, Louisiana. The Government suspected that the M/V TRIDENT NAVIGATOR had illegally discharged "oily waste" in violation of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, *et seq.*[17] At Fafalios's urging, defendants hired Chalos to be his criminal defense counsel, and the parties confirmed Fafalios's legal representation in a retainer agreement executed in full on February 17, 2014.[18]

On June 17, 2014, defendants notified Chalos that they considered the retainer agreement to be null and void and refused to continue to pay Fafalios's legal fees.[19] Chalos continued to represent Fafalios, who proceeded to criminal trial and was found guilty on

---

[15] R. Doc. 15-1 at 1.

[16] R. Doc. 15-1 at 7, cl. 14.

[17] R. Doc. 27 at 3-4 ¶ 11.

[18] *Id.* at 5 ¶ 15, 22-24.

[19] *Id.* at 5-6 ¶ 16.

4

December 16, 2014.[20] Chalos invoiced nearly $400,000 in legal fees and expenses associated with Fafalios's representation.[21]

Defendants argue that their retainer agreement with Chalos for Fafalios's representation is null and that they should not be liable for Fafalios's legal fees because defendants agreed to the contract in error.[22] Defendants' third-party complaint alleges that unbeknownst to defendants, on two occasions in December 2013, Fafalios, while Chief Engineer of the M/V TRIDENT NAVIGATOR, instructed certain crew members to illegally discharge oily waste into the ocean.[23] Again, unknown to defendants, Fafalios then falsified entries in the M/V TRIDENT NAVIGATOR's Oil Record Book to conceal his illegal actions.[24] Fafalios also allegedly made false statements and encouraged other crew members to make false statements to members of the United States Coast Guard during the Government's criminal investigation.[25] In addition, defendants assert that Fafalios misled defendants and their attorneys during the investigation because Fafalios persistently asserted his innocence while knowingly making false statements to defendants and others.[26] Relying on Fafalios's repeated assurances of innocence, defendants agreed to pay for

---

[20] *Id.* at 6 ¶ 19.

[21] *Id.* at ¶ 17.

[22] R. Doc. 7 at 2.

[23] R. Doc. 20 at 2-3 ¶¶ 5-6.

[24] *Id.* at 3 ¶ 7.

[25] *Id.* at 4 ¶¶ 9-10.

[26] *Id.* at 5 ¶ 12.

independent legal counsel, Chalos, to represent Fafalios in the Government's investigation and eventual criminal proceedings.[27]

Only after defendants executed Chalos's retainer agreement did defendants allegedly learn about Fafalios's misrepresentations. The Government disclosed to defendants certain physical evidence that contradicted Fafalios's prior statements. In addition, other crew members recanted their statements and notified defendants that those false statements were made at Fafalios's urging.[28] On June 17, 2014, defendants notified Chalos that they considered the retainer agreement null and that they would not be responsible for any legal fees incurred on Fafalios's behalf. At that time, defendants had already paid Chalos approximately $46,000.[29]

Fafalios, as third-party defendant, now moves to dismiss defendants' third-party complaint for lack of subject matter jurisdiction, failure to state a claim, and *forum non conveniens*. The Court concludes that defendants' third-party complaint should be dismissed for *forum non conveniens*. Accordingly, the Court will not address Fafalios's other grounds for dismissal.

## II.    LEGAL STANDARD

The doctrine of *forum non conveniens* allows a court to decline jurisdiction and dismiss a case, even when the case is properly before the court, if it may be more conveniently tried in another forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th

---

[27]    *Id.* at 6 ¶ 14.

[28]    *Id.* at 7-8 ¶¶ 18-19.

[29]    *Id.* at 8 ¶¶ 20-21.

Cir. 2008). The doctrine "rests upon a court's inherent power to control the parties and the cases before it and to prevent its process from becoming an instrument of abuse or injustice." *In re Air Crash Disaster Near New Orleans v. Pan Am. World Airways, Inc.*, 821 F.2d 1147, 1153-54 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom.*, *Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *opinion reinstated on other grounds*, 883 F.2d 17 (5th Cir. 1989) (en banc). The doctrine allows the court to dismiss a case because the plaintiff's chosen forum is "so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." *In re Volkswagen*, 545 F.3d at 313 n.8 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Because the doctrine "not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely," it is subject to "careful limitation." *Id.*

In analyzing whether a case should be dismissed for *forum non conveniens*, the Court must first determine whether an adequate alternative forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). The alternative forum must be both available and adequate. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000). A forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002) (citing *In re Air Crash Disaster*, 821 F.2d at 1165). A forum is adequate if the parties will not be deprived of all remedies or treated unfairly. *See Alpine View*, 205 F.3d at 221. If the defendant shows that an adequate alternative forum exists, the court must then consider whether certain private and public interest factors weigh in favor of dismissal. *Piper Aircraft*, 454 U.S. at 257;

7

*McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 424 (5th Cir.2001). The defendant bears the burden of persuading the court that a lawsuit should be dismissed on *forum non conveniens* grounds. *DTEX*, 508 F.3d at 794.

The existence of a contractual forum selection clause imposes a heavy burden on the party resisting dismissal. *See Carnival Cruise Lines*, 499 U.S. 585, 586 (1991). Forum selection clauses are prima facie valid and should be enforced unless the non-moving party can show that enforcement would be unreasonable or unjust under the circumstances. *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 16-17 (1972). Unreasonableness may exist when (1) the incorporation of the forum selection clause into the parties' contract was a result of fraud or overreaching; (2) the party seeking to escape enforcement of the forum selection clause "will . . . be deprived of his day in court" because of grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; and/or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines*, 499 U.S. 585, 595 (1991); *Bremen*, 407 U.S. at 12-13, 15, 18).

## III.  DISCUSSION

The sole basis on which Fafalios argues defendants' claim should be dismissed for *forum non conveniens* is the applicability of the forum selection clause in the employment contract between defendants and Fafalios. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013) ("[T]he appropriate way to enforce a

8

forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*").

"[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). Neither defendants nor Fafalios dispute the validity of the forum selection clause in the employment contract.[30] Nor do defendants show that enforcement of the clause would be unreasonable or unjust under the circumstances. Instead, defendants argue that the forum selection clause is inapplicable because defendants' fraud claim against Fafalios arises "completely independently" of the parties' employment contract.[31] Accordingly, the issue before the Court is not whether the forum selection clause is enforceable, but whether it applies to this dispute.

### A.     Applicability of the Forum Selection Clause

Before a court will enforce a forum selection clause, it must first determine "whether the clause applies to the type of claims asserted in the lawsuit." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997)). The court "must look to the language of the parties' contract[] to determine which causes of action are governed by the forum selection clause[]." *Id.* (quoting *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)). "[I]f the *substance* of the[] claims, stripped of their labels, does not

---

[30]     R. Doc. 29 at 21 ("Defendants do not seek to invalidate that clause, and agree that any dispute arising out of the interpretation or performance of Fafalios' contract . . . should be decided in Greece by the Greek courts.").

[31]     R. Doc. 29 at 21-22.

fall within the scope of the [forum selection] clause[], the clause[] cannot apply." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

To determine whether a forum selection clause applies to specific tort claims, the Eighth Circuit has enunciated three general tests: (1) whether the tort claims "ultimately depend on the existence of a contractual relationship between the parties"; (2) whether resolution of the tort claims "relates to the interpretation of the contract"; and (3) whether the tort claims "involve the same operative facts as a parallel claim for breach of contract." *Terra Int'l*, 119 F.3d at 694; *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (applying the "relates to interpretation of the contract" test); *Gullion v. JLG Serviceplus, Inc.*, No. H-06-1015, 2007 WL 294174, at *5 (S.D. Tex. Jan. 29, 2007) (relying on *Terra Int'l*).

Here, the forum selection clause states, "Any dispute arising out of the interpretation or the performance of this Contract shall be referred to the Courts of Piraeus (Maritime Division) which are exclusively competent to hear these disputes applying Greek Law to the exclusion of the Courts of any country or jurisdiction."[32] The operative language is "[a]ny dispute arising out of the interpretation or the performance of this Contract."

As a general rule, courts read forum selection clauses broadly, "in keeping with the public policy favoring their use." *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 432 (E.D.N.Y. 2014) (collecting cases). For example, courts have held that "the language 'arising out of' is broad in scope and reaches all disputes that have their origin in the employment contract, regardless of whether the dispute involves interpretation or

---

[32] R. Doc. 15-1 at 7, cl. 14.

10

performance of the contract *per se.*" *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 789 (N.D. Ill. 2013) (collecting cases);[33] *see also TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 35 (2d Cir. 2011) (interpreting a forum selection clause that reads, "arising out of or relating to this agreement or the Google Program(s)," broadly to encompass plaintiff's claim); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1515 (10th Cir. 1995) (holding that "arising in connection with the implementation, interpretation or enforcement" was broad language). Similarly, courts hold that the use of phrases like "arising out of" should be read broadly to encompass both contractual and tort claims. *See, e.g.*, *Paduano*, 55 F. Supp. 3d at 432 ("[W]hen 'arising out of,' 'relating to,' or similar language appears in a forum selection clause, "such language is regularly construed to encompass securities, antitrust, and tort claims associated with the underlying contract."); *see also Roby*, 996 F.2d at 1361 (holding that there is "no substantive difference . . . between the phrases 'relating to,' 'in connection with' or 'arising from,' and that such language should be broadly read to include tort actions). Courts also find phrases like "any dispute" indicative of the broad scope of a forum selection clause or similar contractual provision. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (interpreting broadly a clause that stated, "any dispute arising from the making, performance or termination of this Charter Party"); *Nat'l R.R. Passenger Corp.*

---

[33] The Court notes that some of the cited cases pertain to the scope and interpretation of arbitration clauses, rather than forum selection clauses. These cases are nonetheless persuasive because "in relevant aspects, there is no difference between the two." *Vimar Seguros y Reaseguro, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 532 (Stevens, J. dissenting); *see also Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901-02 ("Therefore, analysis of foreign forum selection clauses can be extended to forum arbitration clauses.").

*v. Boston & Me. Corp.*, 850 F.2d 756, 760 (D.C. Cir. 1988) (explaining that the phrase "[a]ny claim or controversy" is broad in scope).

Here, defendants attempt to contrast what they characterize as two separate disputes with Fafalios. In what defendants call the "Retainer Agreement Controversy," the issue is who, if anyone, is liable for the fees and expenses Chalos incurred in representing Fafalios during his criminal investigation and trial.[34] The second dispute, termed the "Employment Controversy," "involves whether Fafalios is liable to Defendants for the damages vicariously inflicted on them when, as an employee of Defendants under a Greek seaman's contract, Fafalios illegally discharged oil into the ocean and falsified records to cover-up his crime."[35] Defendants point out that "the Employment Controversy must and will be resolved under Greek law, by Greek courts, who alone are empowered to interpret the Fafalios Employment Contract."[36]

The Court concludes that the forum selection clause encompasses defendants' claim for fraud, which is ultimately grounded in Fafalios's conduct as a seaman aboard the M/V TRIDENT NAVIGATOR. Interpreting the forum selection clause broadly, the Court finds that the language *"*[a]ny dispute arising out of the interpretation or the performance of this Contract" encompasses all disputes that "have their origin in the employment contract*,* regardless of whether the dispute involves the interpretation or performance of the contract *per se.*" *See Marzano*, 942 F. Supp. 2d at 789.

---

[34]  R. Doc. 29 at 2.

[35]  *Id.*

[36]  *Id.*

Both the Employment Controversy and the Retainer Agreement Controversy are grounded in Fafalios's employment relationship with defendants. "[P]olicies justifying application of forum selection clauses in contract cases are equally applicable to tort causes of action arising out of that contractual relationship." *Knight Oil Tools, Inc. v. Unit Petroleum Co.*, No. CIV 05-0669 JB/ACT, 2005 WL 2313715, at *12 (D.N.M. Aug. 31, 2005) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983)). Notably, Fafalios was still employed as a seaman at the time of the illegal discharge in January 2014, as well as at the time of the alleged fraud in February 2014.[37] Defendants agreed to hire Chalos on Fafalios's behalf while they internally investigated their own vessel and crew to determine whether any improper or illegal activity occurred. There are no facts that would indicate that at this time, defendants no longer considered Fafalios to be their employee. Accordingly, the material facts surrounding the "Retainer Agreement Controversy" arose during the course of Fafalios's employment.

More importantly, defendants' tort claim "involve[s] the same operative facts as a parallel claim for breach of contract." *See, e.g., Terra Int'l*, 119 F.3d at 694; *Manetti-Farrow*, 858 F. 2d at 514. In defendants' own words, the Employment Controversy "involves whether Fafalios is liable to Defendants for the damages vicariously inflicted on them when, as an employee of Defendants under a Greek seaman's contract, Fafalios illegally discharged oil into the ocean and falsified records to cover-up his crime." To prevail on the Retainer Agreement Controversy, defendants must prove that Fafalios falsely proclaimed his innocence, which means defendants must first prove that Fafalios actually

---

[37] *See* R. Doc. 15-1 at 2 (specifying that Fafalios's employment, which began in December 2014, would continue for a period of seven months).

discharged the oil illegally and falsified records to conceal his actions. In other words, to show that Fafalios misrepresented his innocence, defendants have to prove the same conduct that breached the employment contract. That defendants must also show that Fafalios falsely proclaimed his innocence does not change the result. Therefore, defendants' fraud claim rests on the same material facts as any potential parallel breach of contract action, which defendants freely admit must be litigated in Greece. "[C]laims involving the same operative facts as a claim for breach of contract that is subject to a forum selection clause should also be litigated in the forum chosen by the parties." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 24 (1st Cir. 2009) (internal citations omitted).

Finally, in support of his motion to dismiss for *forum non conveniens*, Fafalios argues that defendants' claim to indemnity for any liability on Chalos's retainer agreement must arise out of the performance of the employment contract because the contract contains an indemnity provision.[38] The provision on which Fafalios relies states in full: "The seaman hereby agrees and hereby gives irrevocable order to the Company to withhold from his wages, any amount for covering/indemnifying the Company for any potential damage suffered by the Company through his illegal acts or omissions."[39] In opposition, defendants fail to address specifically Fafalios's claim that the indemnity provision in the employment contract must apply. Because the Courts of Piraeus maintain exclusive jurisdiction over the employment contract, whether this indemnity provision does in fact apply to defendants' claim of indemnity on the basis of Fafalios's fraud is a matter of contractual interpretation that the employment contract vests in the Greek courts. Any

---

[38] R. Doc. 24-1 at 18.

[39] R. Doc. 15-1 at 6, cl. 11(e).

attempt to determine whether Fafalios's indemnity argument has merit would violate the plain language of the forum selection clause. In sum, the Court finds that the forum selection clause in the parties' employment contract applies to this dispute.

Because the Court finds that the forum selection clause applies, defendants, as the parties resisting enforcement, bear the burden to show that enforcement would be unreasonable or unjust under the circumstances. *Bremen*, 407 U.S. at 16-17; *Haynsworth*, 121 F.3d at 963. Defendants have made no attempt to show that enforcement of the forum selection clause would be unreasonable here. Therefore, this dispute must be litigated in Greece.

### B.   Effect of Rule 14(c) Impleader

In addition to suing Fafalios for damages, defendants seek to tender him as a defendant to Chalos under Federal Rule of Civil Procedure 14(c). Under Rule 14(c), "the third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant [and] the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff." Fed. R. Civ. P. 14(c)(2). Defendants argue that because Rule 14(c) requires the plaintiff to proceed directly against the third party, Fafalios cannot rely on the forum selection clause to achieve dismissal.

Even if defendants are correct, the Court finds that their attempt to implead Fafalios under Rule 14(c) is improper. Rule 14(c) provides in relevant part:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable--either to the plaintiff or to the third-party plaintiff--for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

Rule 14(c)(1). By its plain language, Rule 14(c) requires that the original plaintiff must have asserted an admiralty or maritime claim under Rule 9(h). *See Luera v. M/V ALBERTA*, 635 F.3d 181, 187 (5th Cir. 2011) (noting Rule 14(c) impleader was available because the plaintiff's original claim was in admiralty); *Harrison v. Glendel Drilling Co.*, 679 F. Supp. 1413, 1417 (W.D. La. 1988) (holding Rule 14(c) "has no application" where the original plaintiff did not bring his claim under the court's admiralty jurisdiction even though the defendants' third-party claims arose under maritime law). In addition, the Fifth Circuit requires that the third-party plaintiff's claim also arise under admiralty or maritime law. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) ("In addition, the Rule requires the third-party plaintiff . . . to assert an action sounding [in] admiralty or maritime . . . .").

Here, Chalos's state-law breach of contract claim does not arise under admiralty or maritime law. Therefore, defendants' impleader is not proper under Rule 14(c).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS third-party defendant Matthaios Fafalios's Motion to Dismiss for *Forum Non Conveniens*.

New Orleans, Louisiana, this ___28th___ day of August, 2015.

_____*Sarah Vance*_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE